KIRSCHENBAUM LAW, PC
JEFFREY B. KIRSCHENBAUM (SBN: 152290)
RAYMOND E. LOUGHREY (SBN: 194363)
328 15th Street
Oakland, CA 94612
Tel.: (510) 740-9260
jeff@kirschenbaumlaw.com
ray@kirschenbaumlaw.com

Attorneys for Plaintiff
FREMONT BANK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREMONT BANK, a California state-chartered bank,<br><br>     Plaintiff,<br><br>vs.<br><br>VALLEJO HOSPITALITY LLC, et al.<br><br>     Defendants. | CASE NO: 2:23-cv-02281-DJC-JDP<br><br>**PLAINTIFF FREMONT BANK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SPECIAL MOTION TO STRIKE COUNTS ONE AND FIVE OF COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:    February 15, 2024<br>Time:    1:30 p.m.<br>Courtroom:  10<br>Judge:   Hon. Daniel J. Calabretta |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    THE ALLEGATIONS OF THE COMPLAINT AND THE INFERENCES
       THAT CAN REASONABLY BE DRAWN THEREFROM ................................. 2

       A.    Fremont Bank's Loan, the Loan Documents, and the Security
             Interest.................................................................................................... 2

       B.    The Creation of the PACE Assessment Lien and Resulting Default...................... 3

III.   LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 7

       A.    The Authority's Motion to Strike the First Cause of Action Should
             Be Denied................................................................................................. 7

             1.   The Authority Challenges the Legal Sufficiency of the First
                  Cause of Action, and thus the Rule 12(b)(6) Standard
                  Applies ........................................................................................ 7

             2.   Fremont Bank Does Not Dispute the Authority's Contention
                  that the First Cause of Action Arises from An Act in
                  Furtherance of Protected Speech Rights .......................................... 7

             3.   Fremont Bank Stated a Legally Sufficient Cause of Action
                  for Judicial Foreclosure............................................................... 8

       B.    The Authority's Motion to Strike the Fifth Cause of Action Should
             Be Denied................................................................................................ 10

             1.   The Authority Challenges the Factual Sufficiency of the
                  Fifth Cause of Action, and thus the Rule 56 Standard Applies ................ 10

             2.   The Authority's Collusion with the Patels to Impair Fremont
                  Bank's Collateral Does Not Constitute Protected Speech ...................... 11

             3.   Fremont Bank Has Stated a Legally Sufficient Claim for
                  Negligent Impairment of Security................................................... 13

             4.   Fremont Bank Should Be Allowed to Supplement the
                  Evidence Based on Factual Challenges Before Any Decision
                  Is Made by the Court................................................................... 15

             5.   The Court Should Grant Fremont Bank Leave to Amend to
                  Cure Any Pleading Defects........................................................... 16

       C.    Entitlement to Attorneys' Fees............................................................... 17

       D.    This Motion Should Be Summarily Denied Because the Authority
             Failed to Adequately Meet and Confer ..................................................... 18

V.     CONCLUSION .................................................................................................... 20

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Barrow v. Santa Monica Builders Supply Co.*
(1937) 9 Cal. 2d 601, 605-605 ....................................................................9

*Beronio v. Ventura County Lumber Co.*
(1900) 129 Cal. 232, 237 ............................................................................9

*Cahill v. Liberty Mut. Ins. Co.*
(9th Cir. 1996) 80 F.3d 336, 338.................................................................6

*Conception v. Ygrene Energy Fund*
2021 Cal. Super. LEXIS 46184 ....................................................................7

*Conley v. Gibson*
(1957) 355 U.S. 41, 45-46............................................................................6

*County of Sonoma v. Fed. Housing Fin. Agency*
(9th Cir. 2012) 710 F. 3d 987, 990........................................................8, 9, 12, 14

*Dobbins v. Economic Gas Co.*
(1920) 182 Cal. 616, 624 ............................................................................9

*Fait v. New Faze Development, Inc.*
(2012) 207 Cal. App. 4th 284, 302 ................................................13, 15, 16, 17

*FilmOn.com Inc. v. DoubleVerify Inc.*
(2019) 7 Cal. 5th 133, 139 ..........................................................................6

*Herring Networks, Inc. v. Maddow*
(9th Cir. 2021) 8 F.4th 1148, 1160 ........................................................6, 16

*Honda Trading Am., Corp. v. Lexington Ins. Co.*
2006 U.S. Dist. LEXIS 12162, *4-5 ......................................................7, 12

*Mann v. Quality Old Time Service, Inc.*
(2006) 139 Cal. App. 4th 328, 344-345 ....................................................17

*Mireskandari v. Daily Mail Gen. Trust PLC*
(C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 201202 ....................................18

*Morgan v. Ygrene Energy Fund, Inc.*
(2022) 84 Cal.App.5th 1002, 1009-1010 ..................................................1

*Morongo Band of Mission Indians v. Rose*
(9th Cir. 1990) 893 F.2d 1074, 1079..........................................................16

*Navellier v. Sletten*
(2002) 29 Cal. 4th 82 ..................................................................................11

*Owens v. Kaiser Found. Health Plan, Inc.*
(9th Cir. 2001) 244 F.3d 708, 712..........................................................6, 16

*Park v. Board of Trustees of California State University*
(2017) 2 Cal. 5th 1057, 1061 ......................................................................6

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*
(2005) Cal. App. 4th 658 ............................................................................11

*Planned Parenthood Fed'n of Am., Inc. v. Center for Medical Progress*
(9th Cir. 2018) 890 F.3d 828, 833-34 ....................................................6, 7, 15

*Renewable Res. Coal., Inc. v. Pebble Mines Corp.*
(2013) 218 Cal. App. 4th 384 ....................................................................11

*Scheuer v. Rhodes*
(1974) 416 U.S. 232, 236 ............................................................................6

*U.S. Financial v. Sullivan*
(1974) 37 Cal. App. 3d 5.................................................... 13, 15, 16, 17

*Wang v. Wal-Mart Real Estate Bus. Trust*
(2007) 153 Cal. App. 4th 790 ....................................................................11

-ii-

*Wilson v. Cable News Network, Inc.*
  (2019) 7 Cal. 5th 871, 884 ..................................................................................6

*Woloszynska v. Netflix, Inc.*
  (N.D. Cal. Oct. 30, 2023) 2023 U.S. Dist. LEXIS 194648 at *25-26............................6

*Yuga Labs v. Ripps*
  (Oct. 30, 2023) 2023 U.S. App. LEXIS 28727 ..........................................................13

**Statutes**

Cal. Civ. Code § 2931 ..........................................................................................17
Cal. Civ. Code § 2931a .....................................................................................8, 19
Cal. Civ. Code § 1714 .....................................................................................13, 17
Cal. Code Civ. Proc. § 425.16(b) ............................................................................6
Cal. Code Civ. Proc. § 425.16(c) ...........................................................................17
Cal. Code Civ. Proc. § 425.16(c)(1) .......................................................................17
Cal. Rev. & Tax. Code § 3712 ............................................................................8, 9

**Rules**

Fed. Rule Civ. Proc. 12(b)(6)..........................................................................6, 7, 19
Fed. Rule Civ. Proc. 15(a)(2) ...........................................................................6, 16
Fed. Rule Civ. Proc. 56 ..............................................................................6, 10, 11, 15, 19

**Other Authorities**

4 Witkin, Summary of California Law
  (11th ed. 2017) *Security Transactions in Real Property*, § 145, p. 931 .........................8

-iii-

Plaintiff FREMONT BANK ("Fremont Bank") respectfully submits this memorandum of points and authorities in opposition to the special motion to strike counts one and five of the Verified Complaint filed by defendant California Statewide Communities Development Authority (the "Authority").

## I. INTRODUCTION

Resolution of the Authority's motion to strike turns on the following questions:

- In an action for judicial foreclosure, if there is a lien on the property to secure the payment of an obligation other than real property taxes, may the agency charged with collection be made a party for the purpose of determining the amount that is due on the obligation at the time of foreclosure? (First Cause of Action.)

- Is an agency's collusion with a property owner to borrow twice against the same improvements, and secure the second loan with a lien that has priority over the first mortgage, a form of protected free speech? (Fifth Cause of Action.)

- Alternatively, can a mortgage lender state a cause of action for negligent impairment of collateral against an agency that colluded with an owner to over-encumber, and dissipate, a lender's collateral, where the agency knew its conduct would damage the lender and cause the owner to default on its mortgage? (Fifth Cause of Action.)

The Authority's motion should be denied because it is a proper party to the cause of action for judicial foreclosure; and its collusion with Vallejo LLC and the Patels to damage Fremont Bank's collateral is not a form of protected speech. Moreover, even if the Agency's conduct were a form of protected speech, its motion would fail because, under California law, a third party generally can be held liable for negligent impairment of a lender's security.

"When it first enacted PACE, the Legislature anticipated that local governments would operate their own programs, as they did with other aspects of municipal finance. . . But despite the public financing envisioned, private companies (with profit motives) soon offered turnkey solutions to local governments interested in establishing a PACE program." *Morgan v. Ygrene Energy Fund, Inc.* (2022) 84 Cal.App.5th 1002, 1009-1010. "In short order, [private companies] were running almost all of the PACE programs throughout the state." (*Id.* at 1010.)

-1-

The Authority is a player in the multi-billion dollar municipal finance industry and its actions must be judged as such. Although the Government Code gives a PACE lien priority over a first mortgage, it does not exempt conduit bond issuers and PACE administrators from participation in litigation, or immunize them from tort liability where, as here, they negligently, or knowingly, collude with a property owner to damage a mortgage lender's collateral. Furthermore, the motion should be summarily denied, pursuant to Section I.C of the Standing Orders in Civil Cases, dated December 19, 2023, as a result of the Authority's failure to engage in a thorough meet and confer process prior to filing this motion.

## II. THE ALLEGATIONS OF THE COMPLAINT AND THE INFERENCES THAT CAN REASONABLY BE DRAWN THEREFROM

### A. Fremont Bank's Loan, the Loan Documents, and the Security Interest

On February 28, 2017, defendants Anil Patel and Sunita Patel obtained a loan from Fremont Bank in the amount of $3,950,250, which is evidenced by a Promissory Note of the same date (the "Note"). (Verified Complaint, ¶ 15 and Exh. A.) The Note was amended by a Loan Modification Agreement dated January 14, 2021, and further amended by a Loan Modification Agreement dated May 21, 2021. (*Id.*) The loan proceeds were used for the acquisition, remodeling, and redevelopment of a hotel, in Vallejo, California, including clean energy upgrades. (*Id.*, ¶ 32.)

The Note is secured by a Deed of Trust, Assignment of Rents, and Security Agreement and Fixture Filing, dated February 28, 2017 (the "Deed of Trust"). (Verified Complaint, ¶ 16 and Exh. B.) The Deed of Trust was amended by an Amendment to Deed of Trust dated January 14, 2021; by an Amendment to Deed of Trust dated May 21, 2021; and by an Amendment to Deed of Trust and Assumption Agreement dated July 27, 2021. (*Id.*, ¶ 25.) The Note and Deed of Trust are collectively referred to herein as the "Loan Documents."

Pursuant to the Amendment to Deed of Trust and Assumption Agreement, defendant Vallejo LLC assumed and promised to pay the Note, and agreed to comply with all of the obligations and liabilities of the original borrowers (Anil Patel and Sunit Patel) under the terms of the Note and the Deed of Trust. (Verified Complaint, ¶ 26 and Exh. C.) Also, the outstanding principal balance of the Note was increased by $802,750, to a new principal balance of $4,496,092. (*Id.*, ¶ 27.)

-2-

1     The Deed of Trust irrevocably grants, conveys, and assigns to Fremont Bank, in trust, with
2  power of sale, the "Mortgaged Property." (Verified Complaint, ¶ 17 and Exh. B.) The Mortgaged
3  Property includes, among other things, the "Land," the "Improvements," the "Fixtures," the
4  "Personalty," and other items, all as defined in the Deed of Trust. (*Id.*)

5     The Mortgaged Property also is collateral for a loan from the U.S. Small Business
6  Administration that is subordinate to Fremont Bank's loan. (*Id.*, ¶¶ 9-10.)

7  **B.**     **The Creation of the PACE Assessment Lien and Resulting Default**

8     The Deed of Trust provides at Section 16 that the creation of any lien or encumbrance on
9  the Mortgaged Property constitutes an Event of Default under the Deed of Trust. (Verified
10  Complaint, ¶ 18.) Section 21 of the Deed of Trust provides that any "Transfer" of the Mortgaged
11  Property, including the granting, creating, or an attachment of a lien on the Mortgaged Property,
12  constitutes an Event of Default. (*Id.*, ¶ 19.) Section 22 of the Deed of Trust specifies what
13  constitutes Events of Default, including "any event of condition that under the terms of this
14  Instrument is specified as constituting an Event of Default, including, without limitation, any Event
15  of Default under Section 21...." (*Id.*, ¶ 20.) Section 23(a) of the Deed of Trust provides for the
16  acceleration of indebtedness upon an Event of Default. (*Id.*, ¶ 21.)

17     In the Spring of 2023, Vallejo LLC, and Anil Patel and Sunita Patel, as the managing
18  members of Vallejo LLC, sought financing pursuant to the Property Assessed Clean Energy
19  ("PACE") program administered by the Authority for the same clean energy upgrades that were
20  paid for with Fremont Bank's loan and part of the bank's collateral. (Verified Complaint, ¶ 30.) In
21  general, the PACE program allows a property owner to finance the cost of energy or other eligible
22  improvements on real property, and then pay the costs back over time through a voluntary
23  assessment that creates a lien on the property having priority over mortgages. (*Id.*) The PACE
24  financing is repaid by an assessment added to the property owner's property tax bill, and thus is
25  secured by a priority tax lien that runs with the land. (*Id.*, ¶ 31.)

26     As part of its application, Vallejo LLC, Anil Patel, and Sunita Patel submitted forged
27  documents to the Authority indicating that Fremont Bank and Capital Access (an agent of the U.S.
28  Small Business Administration) consented to the PACE Assessment Lien when in fact they did not.

-3-

(Verified Complaint, ¶ 36.) Given the context of this transaction, it was obvious to the Authority that the consents were forged.[1] However, the Authority *did not* seek Fremont Bank's consent to the creation of the PACE Assessment Lien, or contact or attempt to contact Fremont Bank, and Fremont Bank *never consented* to its creation. (*Id.*) Although the Authority required Vallejo LLC to provide notarized signatures on other documents it submitted in connection with its application, the Authority did *not* require Vallejo LLC or the Patels to provide notarized consents from Fremont Bank or Capital Access. (*Id.*, ¶ 73.) The terms of the PACE Assessment – a $3.1 million cash-out refinancing secured by a super-priority lien – were such that no rational mortgage lender would have consented to it. The PACE loan did not result in any green energy upgrades or other improvements, and it saddled the owner with a substantial ongoing financial obligation, in addition to the loans from Fremont Bank and the U.S. Small Business Administration.

On May 18, 2023, the Authority met and approved the issuance of up to $4,000,000 in commercial PACE bonds for Vallejo LLC to finance various improvements on the Land, which improvements had been paid for by Vallejo LLC from the proceeds of the loan from Fremont Bank. (Verified Complaint, ¶ 32.) The transaction had no legitimate business purpose.

On May 22, 2023, an Assessment Contract between the Authority and Vallejo LLC was recorded against the Land. (Verified Complaint, ¶ 33 and Exh. E.) The Assessment Contract reflects that an assessment lien had been levied against the Land in favor of the Authority in the amount of $3,187,735.78, with annual installments ranging from $239,152 to $361,959 from 2023 through 2043 (the "PACE Assessment Lien"). (*Id.*, ¶ 34.) Section 25 of the Assessment Contract shows that the Authority knew that Vallejo LLC that entering into the Assessment Contract without the consent of its existing lenders (*i.e.*, Fremont Bank) would constitute an event of default under the Loan Documents:

---

[1] The SBA's unwillingness to subordinate to PACE financing for commercial loans was widely publicized in the industry. For example, see Exhibit E of the Cross-claims of the SBA filed in this action. [Dkt. 19-5], which states in part, "SBA has determined that subordination in favor of C-PACE financing is not appropriate for 504 loans" and SBA "will not be approving any such requests."

-4-

**Section 25**. <u>Possibility of Default under Current Mortgage (or Other Indebtedness); Potential inability to Refinance Mortgage or Transfer Assessment</u>. BEFORE SIGNING THIS CONTRACT, THE PROPERTY OWNER SHOULD CAREFULLY REVIEW ANY MORTGAGES, DEEDS OF TRUST, LOAN AGREEMENTS OR OTHER SECURITY INSTRUMENTS WHICH AFFECT THE PROPERTY OR WHICH THE PROPERTY OWNER IS A PARTY. ENTERING INTO THIS CONTRACT WITHOUT THE CONSENT OF THE PROPERTY OWNER'S EXISTING LENDERS COULD CONSTITUTE AN EVENT OF DEFAULT UNDER SUCH MORTGAGES, DEEDS OF TRUST, LOAN AGREEMENTS OR OTHER SECURITY INSTRUMENTS. DEFAULTING UNDER A MORTGAGE, DEED OF TRUST, LOAN AGREEMENT OR OTHER SECURITY INSTRUMENT COULD HAVE SERIOUS CONSEQUENCES TO THE PROPERTY OWNER, WHICH COULD INCLUDE THE ACCELERATION OF THE PROPERTY OWNER'S REPAYMENT OBLIGATIONS.

(*Id.*, ¶ 35 and Exh. E.)

The Authority nevertheless entered into the Assessment Contract. The creation of the PACE Assessment Lien against the Land constituted a non-curable default under sections 16, 21, and 22 of the Deed of Trust. (Verified Complaint, ¶ 39 and Exh. B.) The annual assessments of $239,152 to $361,959 badly impacted Vallejo LLC's cash flow and its ability to repay the loan from Fremont Bank. Given that the purported lender "consents" were not notarized (unlike the other documents that the Patels provided to the Authority), the Authority knew, or should have known, that Fremont Bank (and the U.S. Small Business Administration) did not consent to the PACE Assessment Lien, and that its recording constituted an event of default under the Loan Documents. (*Id.* ¶ 73.)

Accordingly, by letter dated July 12, 2023, Fremont Bank provided Vallejo LLC, Anil Patel, and Sunita Patel with written notice of these non-curable defaults and of the bank's acceleration all indebtedness due, and demanded the immediate payment of the full outstanding amount of $4,493,803 as of the date of the letter. (*Id.*, ¶ 40 and Exh. F.) Vallejo LLC has failed and refused to comply. (*Id.*)

## III.  LEGAL STANDARD

California's "anti-SLAPP statute makes available a special motion to strike meritless claims early in litigation -- but only if the claims arise from acts in furtherance of a person's 'right of

-5-

1  petition or free speech under the United States Constitution or the California Constitution in
2  connection with a public issue.'" (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal. 5th 133, 139
3  (2019) (quoting Cal. Code Civ. Proc. § 425.16(b).) District courts evaluate an anti-SLAPP motion
4  in two steps. "Initially, the moving defendant bears the burden of establishing that the challenged
5  allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. If the
6  defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal
7  merit.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal. 5th 871, 884 (quoting *Park v. Board of*
8  *Trustees of California State University* (2017) 2 Cal. 5th 1057, 1061.)

9         Where an anti-SLAPP motion is based on a complaint's *legal* deficiencies, the motion is
10  "treated in the same manner as a motion under Rule 12(b)(6)." (*See Planned Parenthood Fed'n of*
11  *Am., Inc. v. Center for Medical Progress* (9th Cir. 2018) 890 F.3d 828, 833-34.) Under Rule
12  12(b)(6), a claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no
13  set of facts in support of his claim which would entitle him to relief." (*Conley v. Gibson* (1957) 355
14  U.S. 41, 45-46; *Cahill v. Liberty Mut. Ins. Co.* (9th Cir. 1996) 80 F.3d 336, 338; *Scheuer* v. *Rhodes*
15  (1974) 416 U.S. 232, 236 (a well-pleaded complaint may proceed even if it appears "that a recovery
16  is very remote and unlikely").) All material allegations of the complaint are accepted as true, as
17  well as all reasonable inferences to be drawn from them. (*Cahill*, 80 F.3d at 338.) Moreover, if an
18  anti-SLAPP attack is facial and a district court believes a plaintiff's allegations are deficient but
19  could be cured, it should freely and liberally grant leave to amend pursuant to Federal Rule of Civil
20  Procedure 15(a)(2). (*Woloszynska v. Netflix, Inc.* (N.D. Cal. Oct. 30, 2023) 2023 U.S. Dist. LEXIS
21  194648 at *25-26, citing *Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148, 1160 and
22  *Owens v. Kaiser Found. Health Plan, Inc.* (9th Cir. 2001) 244 F.3d 708, 712.)

23         In contrast, when an anti-SLAPP motion makes a factual challenge to a claim, the Rule 56
24  standard applies. (*Planned Parenthood*, 280 F. 3d at p. 834.) Rule 56 provides that summary
25  judgment should be granted only if there is no genuine dispute as to material facts and if the moving
26  party is entitled to judgment as a matter of law. The moving party has the burden of showing that
27  there is no genuine dispute as to material fact. Once the moving party has met this burden, the
28  nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue

-6-

1   for trial.  All evidence presented by the non-movant must be believed for purposes of summary
2   judgment, and all justifiable inferences must be drawn in favor of the non-movant.  (*Honda Trading*
3   *Am., Corp. v. Lexington Ins. Co*., 2006 U.S. Dist. LEXIS 12162, *4-5.)  On an anti-SLAPP motion,
4   the district court must allow discovery, with opportunities to supplement evidence based on the
5   factual challenges, before any decision is made by the court.  (*Planned Parenthood*, 280 F.3d at p.
6   834.)

7   **IV.    ARGUMENT**

8       **A.    The Authority's Motion to Strike the First Cause of Action Should Be Denied**

9               **1.    The Authority Challenges the Legal Sufficiency of the First
10                      Cause of Action, and thus the Rule 12(b)(6) Standard Applies**

11          Fremont Bank's first cause of action against the Authority is for a declaration of the amount
12   due to the Authority at the time of the judicial foreclosure and sale of the Mortgaged Property.  The
13   Authority attacks the legal underpinnings of this claim, arguing that it is not a proper party because
14   it holds a super-priority PACE assessment lien that runs with the land, and thus "Fremont [Bank]
15   cannot, as a matter of law, foreclose the Authority's interest."  (Authority's MPA, at 13:20-26.)
16   Both the Authority and Fremont Bank agree that the Court should apply the Rule 12(b)(6) standard
17   in analyzing this claim.  (*Id.* 13:7-9.)

18               **2.    Fremont Bank Does Not Dispute the Authority's Contention that
19                      the First Cause of Action Arises from an Act in Furtherance of
                        Protected Speech Rights**

20          The Authority contends that the filing of the PACE Assessment Lien is protected activity
21   under California's anti-SLAPP statute as a statutory prerequisite to a potential judicial foreclosure
22   citing to a Superior Court's order, *Conception v. Ygrene Energy Fund*, 2021 Cal. Super. LEXIS
23   46184, and the cases cited therein.  (Authority's MPA, at 12:1-10.)  For purposes of this opposition,
24   Fremont Bank does not dispute this.  But no cause of action qualifies as a SLAPP merely because
25   the defendant's actions conceptually fall within the ambit of the statute's initial prong, and Fremont
26   Bank may still defeat the anti-SLAPP motion by establishing that it has stated a claim for relief.  As
27   set forth below, Fremont Bank easily meets its burden.

28

-7-

### 3. Fremont Bank Stated a Legally Sufficient Cause of Action for Judicial Foreclosure

The Authority's motion to strike is premised on the argument that its interest in the Mortgaged Property cannot be foreclosed. But Fremont Bank does not seek to foreclose the Authority's lien; rather, the bank seeks a *judicial declaration of the amount due* to the Authority at the time of foreclosure so it can be paid from the proceeds of the foreclosure sale. California law clearly provides for naming in a cause of action for judicial foreclosure a state agency that asserts a lien other than for real property taxes in order to determine the *extent* of the lien, as well as any party that recorded a lien against the property after the mortgage at issue was recorded. (Cal. Civ. Code § 2931a.) This includes a state agency such as the Authority, so that any delinquent amounts due under a PACE assessment lien at the time of foreclosure may be determined. (*See, e.g., County of Sonoma v. Fed. Housing Fin. Agency* (9th Cir. 2012) 710 F. 3d 987, 990; Cal. Rev. & Tax. Code § 3712.) When a property that is subject to a PACE lien is "foreclosed upon, the amount that is delinquent is due. The remainder of the assessment remains a lien on the property." (*Id.*)

California Civil Code section 2931a states that a California agency with a tax lien on real property is a proper party to a foreclosure action *so that the extent and effect of the lien may be determined.* That section states, in relevant part:

> In any action brought to … foreclose a deed of trust, mortgage, or other lien upon real property … upon which exists a lien to secure the payment of taxes or other obligations to an agency of the State of California, other than ad valorem taxes upon the real property, the state agency charged with the collection of the tax obligation may be made a party. ***In such an action, the court shall have jurisdiction to determine the priority and effect of the liens described in the complaint in or upon the real property*** or estate for years therein, but the jurisdiction of the court in the action shall not include a determination of the validity of the tax giving rise to the lien or claim of lien….

(Cal. Civ. Code § 2931a, bold italics added.) Many other authorities are in accord. (*See, e.g.,* 4 Witkin, Summary of California Law (11th ed. 2017) *Security Transactions in Real Property*, § 145, p. 931 ("Where there are state tax liens other than liens for real property taxes, the state may be made a party to determine priorities."); 5 California Real Estate Law & Practice, § 124.05[6]

1 (Matthew Bender) ("If there is a lien on the property to secure the payment of taxes or other
2 obligations to an agency of the state, other than real property taxes, the state agency charged with
3 the collection of the tax obligation may be made a party.") and § 124.05[9] ("Senior lienors may be
4 joined [in a foreclosure action] to adjudicate their relative rights...."); *Barrow v. Santa Monica*
5 *Builders Supply Co.* (1937) 9 Cal. 2d 601, 605-605 (question of priority of conflicting liens is
6 properly determinable in a foreclosure action when put in issue by the pleadings); *Dobbins v.*
7 *Economic Gas Co.* (1920) 182 Cal. 616, 624 (the "extent" of a lien and whether other claims are
8 subordinate to it are proper issues to be tried in a foreclosure action).)

9 Moreover, long-standing California law makes clear that a proper party to an action for
10 judicial foreclosure is one whose lien attached *after* the date of the first deed of trust. (*Beronio v.*
11 *Ventura County Lumber Co.* (1900) 129 Cal. 232, 237 ("[T]he only proper or necessary parties
12 defendant to [a foreclosure action] are the mortgagor and those who claim an interest in the property
13 derived subsequent to the date of the mortgage.").)

14 Here, the Authority – whose lien attached subsequent to Fremont Bank's – is a necessary
15 and proper party so that the extent and amount of its lien on the Mortgaged Property can be
16 determined. There is no dispute that PACE assessment liens have priority over mortgages under
17 California law. However, when property subject to a PACE assessment lien is foreclosed upon, *any*
18 *amount that is then currently delinquent is due and payable*, and the remainder of the assessment
19 remains as a lien on the property. (*County of Sonoma v. Fed. Housing Fin. Agency* (9th Cir. 2012)
20 710 F. 3d 987, 990, citing Cal. Rev. & Tax. Code § 3712.) Contrary to the Authority's unsupported
21 contention, the amount currently due is *not* "simply" the amount reflected in the Assessment
22 Contract. (Authority's MPA, 14:5-6.)[2] Rather, the *currently-delinquent amount* must be judicially
23 determined, and thus the Authority is named as a defendant so that its rights can be adjudicated.
24 (*County of Sonoma, supra,* 710 F. 3d at p. 990.) This judicial declaration – and not a judicial

25

26 [2] Section 4 of the Assessment Contract provides that the obligation includes "statutory interest and
penalties on any delinquent payments of the Assessment Obligation and the costs of suit (including
27 attorney's fees)." There is no information in the Assessment Contract concerning the calculation of
statutory interest and penalties, and costs of suit is indeterminable without the participation of the
28 Authority in the litigation.

-9-

foreclosure of the PACE assessment lien – is what Fremont Bank seeks. Indeed, in both paragraph 46 of the Verified Complaint and in its prayer for relief on its first cause of action, Fremont Bank prays for "a judicial declaration of the amount, if any, due the Authority at the time of foreclosure." (Verified Complaint, p. 17.) Although the Authority feigns outrage at being named in this suit, its joinder is necessary to determine the amount it is due at the time of sale *as contemplated by California law*. Its motion to strike the first cause of action should be denied.

**B.**     **The Authority's Motion to Strike the Fifth Cause of Action Should Be Denied**

Fremont Bank's fifth cause of action is for negligent impairment of security arising out of the Authority's collusion with the Patels to impair the bank's security interest by financing the same improvements twice and imposing a $3.1 million super-lien on the Mortgaged Property as security for the second loan. The Authority's motion to strike this claim fails because it has not met its prima facie burden of showing that the claim arises from an act in furtherance of the Authority's right to free speech. And even if the Authority could meet this burden, the motion still fails because Fremont Bank has stated a legally sufficient claim and made a prima facie showing sufficient to sustain a judgment in its favor. Finally, because the Authority raises factual issues, the Rule 56 analysis applies to this claim and the Court must allow discovery, with opportunities to supplement evidence based on the factual challenges, before ruling on the motion.

**1.**     **The Authority Challenges the Factual Sufficiency of the Fifth Cause of Action, and thus the Rule 56 Standard Applies**

The Authority makes a factual attack against the fifth cause of action under the anti-SLAPP statute. Among other things, the Authority argues it owed no duty to Fremont Bank because it asked Vallejo LLC to submit lender consents "as part of its underwriting process ... for its own protection" rather than that of Fremont Bank; that "the Authority and Fremont had no relationship whatsoever;" that there is "no basis for Fremont to assert that the Authority owed or assumed any duty of care to Fremont;" and that "the Authority did not cause the PACE Lien to be recorded without Fremont's consent." (Authority's MPA, at 14:12-17.) The Authority further argues that judgment should be entered in its favor because the equities favor the Authority: "if Fremont Bank's allegation against

-10-

the Patels can be proven, then the Authority has been defrauded, and is every bit as much a victim" as Fremont Bank. (Authority's MPA, at 7:6-9.)  Thus, the Rule 56 standard applies.

## 2. The Authority's Collusion with the Patels to Impair Fremont Bank's Collateral Does Not Constitute Protected Speech

The Authority's motion fails at the first step of the analysis because Fremont Bank's fifth cause of action does not arise from the act of recording the PACE Assessment Lien, but rather from the Authority's collusion with the Patels to impair the bank's collateral.  As the California Supreme Court has explained, "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such .... [T]he critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity."  (*Navellier v. Sletten* (2002) 29 Cal. 4th 82.)  Indeed, California courts have interpreted the anti-SLAPP statute's "arising from" language to mean that a claim is based on whatever conduct constitutes the "specific act[] of wrongdoing" that gives rise to the claim.  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) Cal. App. 4th 658; *see also Renewable Res. Coal., Inc. v. Pebble Mines Corp.* (2013) 218 Cal. App. 4th 384, (explaining that "the gravamen of an action is the allegedly wrongful and injury-producing conduct that provides the foundation for the claims").)  Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging.  (*See Wang v. Wal-Mart Real Estate Bus. Trust* (2007) 153 Cal. 4th 790, (holding that anti-SLAPP did not apply to a claim for breach of contract because "[t]he overall thrust of the complaint challenge[d] the manner in which the parties privately dealt with one another, on both contractual and tort theories, and d[id] not principally challenge the collateral activity of pursuing governmental approvals.").)

Here, the specific act of wrongdoing challenged by the fifth cause of action is the *collusion* between the Patels and the Authority to impair the bank's collateral, and not the Authority's act of recording the PACE Assessment Lien itself.  Fremont Bank alleges that the proceeds from *its* $4.5 million loan to Vallejo LLC were used to pay for the clean energy improvements on the Mortgaged Property before the creation of the PACE Assessment Lien; and that these improvements are part of

-11-

the bank's collateral. (Verified Complaint ¶¶ 27, 31-32.) The large annual assessments of the Authority impair the borrower's ability to make its mortgage payments; and the new financing did not result in any improvement to the Mortgaged Payments. Fremont Bank alleges the Authority knew that the Patels did not obtain Fremont Bank's consent and that the Authority's conduct would trigger an event of default on the deed of trust that secured Fremont Bank's loan. Indeed, the Assessment Contract prepared by the Authority specifically warns that "ENTERING INTO THIS CONTRACT WITHOUT THE CONSENT OF THE PROPERTY OWNER'S EXISTING LENDERS COULD CONSTITUTE AN EVENT OF DEFAULT UNDER SUCH MORTGAGES, DEEDS OF TRUST, LOAN AGREEMENTS OR OTHER SECURITY AGREEMENTS." (*Id.*, ¶ 35.) And Freemont Bank alleges that although the Authority required the Patels to submit various notarized documents in connection with their application for PACE financing, they did *not* require the lender consents from Fremont Bank or Capital Access to be notarized. (*Id.*, ¶ 73.)

In ruling on the motion to dismiss the Fifth Cause of Action, all justifiable inferences must be drawn in favor of Fremont Bank. (*Honda Trading Am., Corp.*, 2006 U.S. Dist. LEXIS 12162, 4-5.) Government-sponsored entities (*e.g.*, Fannie Mae and Freddie Mac) were, as a matter of policy, prohibited from buying mortgages secured by PACE liens, even where the proceeds from the assessment were used to pay the cost of retrofits and green energy upgrades. (*County of Sonoma*, 73 F.3d 987, 988-89.)[3] And the SBA has a firm policy against subordinating to commercial PACE financing. [Dkt. 19-5.] Surely the Authority knew that lending on existing infrastructure and creating a $3.1 million super-lien would damage the bank's security interest in a way that typical PACE financing (*i.e.*, a loan to fund the cost of value-enhancing clean energy improvements) would not, and that no rational lender in Fremont Bank's position would agree to subordinate its position in such a way. None of these actions constitutes protected speech under California's anti-SLAPP statute, and the Authority cannot take advantage of the statute simply because the recording provides context for the conduct underlying Fremont Bank's claim. In short, while the Authority's recording

---

[3] Here the proceeds of the assessment were wire transferred by the Authority into Vallejo LLC's bank account, and Vallejo LLC used the money for unrelated business ventures. (Complaint, ¶ 37.)

-12-

of the PACE Assessment Lien is relevant to the fifth cause of action, it is not the basis for it. (*See,*
*e.g., Yuga Labs v. Ripps* (Oct. 30, 2023) 2023 U.S. App. LEXIS 28727.)

### 3. Fremont Bank Has Stated a Legally Sufficient Claim for Negligent Impairment of Security

Even if the Court finds that the Authority's collusion constituted protected speech, the
motion still fails because Fremont Bank has stated a legally sufficient claim and made a prima facie
showing sufficient to sustain a judgment in its favor. Indeed, Fremont Bank's fifth cause of action
is based on case law that deals with this specific issue. In *U.S. Financial v. Sullivan* (1974) 37 Cal.
App. 3d 5, a lender brought suit against a real estate developer and several contractors, seeking
damages for negligent conduct that resulted in an impairment of its security interest in several lots.
(*Id.* at p. 10 and fn 5.) The court stated,

> It is settled law in this jurisdiction that developers, designers and
> contractors are liable to purchasers of real property for damages
> resulting from their negligent acts. [Citations.] ***We see nothing in***
> ***principle or public policy that militates against similar liability to a***
> ***mortgagor or beneficiary of a deed of trust when negligent conduct***
> ***has resulted in the impairment of the mortgagee's or beneficiary's***
> ***security interest.*** [Citation.] Civil Code section 1714 provides:
> 'Everyone is responsible, not only for the result of his willful acts, but
> also for an injury occasioned to another by his want of ordinary care
> or skill in the management of his property or person, except so far as
> the latter has, willfully or by want of ordinary care, brought the injury
> upon himself....'

(*Id.* at p. 13, quoting Cal. Civ. Code § 1714, bold italics added; *see also Fait v. New Faze*
*Development, Inc.* (2012) 207 Cal. App. 4th 284, 302.) The court went on to state that absent a
statutory provision providing an exception to California Civil Code section 1714, no exception
should be made unless clearly supported by public policy. (*U.S. Financial,* 37 Cal. App. 3d at p.
13.)

Likewise, in *Fait v. New Faze Development*, the court held that, "In light of the principle
that a third party generally can be held liable for negligent impairment of security, defendants bore
the burden of demonstrating here in support of their motion for summary judgment why the
'individual (non-borrower) defendants' could not be held liable for that tort under the facts of the

-13-

case. Simply claiming that they were 'innocent' agents and that '[T]here [w]as no evidence of wrongful conduct by any of the[m] … was not enough to carry that burden." (207 Cal. App. 4th at 303.) Here, the Authority simply claims that it did not cause the PACE lien to be recorded without Fremont Bank's consent when the well pleaded allegations of the complaint say that it did. The Authority argues that the Verified Complaint does not allege that the Authority caused Fremont Bank's injuries, and that it was instead the Patels' submission of a forged lender's consent which was the proximate cause. (Authority's MPA, 14:24-15:4.) But the Authority's argument ignores the fact that the lien could not have been recorded without the Authority's involvement, and that it was the *Authority itself* that had requested the Patels to provide the lender consents. While the Authority claims that lender consents are not required for PACE financing and liens under California law (Authority's MPA, 14:12-15), none of the cited sections of the Government and Streets and Highway Codes state that borrowers may further encumber mortgaged property without lender consent, or that an administrator is immune from liability for impairing a lender's collateral. In any event, once the Authority had received the *unnotarized* forms it had to exercise ordinary care and not turn a blind eye to the risks it was imposing on Fremont Bank, *i.e.*, the termination of Fremont Bank's security interest. (*County of Sonoma, supra,* 710 F. 3d at p. 990 ("Speaking generally, foreclosure of a higher-priority – senior – lien on property (e.g., a PACE lien) terminates any junior liens on the property.").)[4]

Indeed, the risks to lenders created by PACE Assessment liens is well-known – including by the Authority – such that the Ninth Circuit has found that Fannie Mae and Freddie Mac were free to categorically refuse to purchase any mortgage with a PACE assessment and to require a borrower to repay the PACE assessment as a condition of refinancing. (*County of Sonoma, supra,* 710 F. 3d 987.) As the Ninth Circuit extensively discussed in that case, the Federal Housing Finance Agency, acting as a regulator, has for years warned the entire industry and state regulators about the risk of PACE programs, including:

---

[4] Section 4 of the Assessment Contract states that, "if the Assessment Obligation is not paid for any year when due, the Authority has the right to have such delinquent installment and its associated statutory penalties and interest stripped off the secured property tax roll and immediately enforced through a judicial foreclosure."

-14-

1    • The first lien status of PACE loans impairs the value of first mortgages to creditors
2      and any subsequent holder of first mortgages.

3    • PACE loans create risks to property owners by increasing borrower debt payments
4      that could cause a greater possibility of default and have a negative impact on the
5      marketability of the property.

6    • PACE loans differ from routine tax assessments in that their size and duration exceed
7      typical local tax programs and lack the community benefits associated with taxing
8      initiatives.

9    • PACE loans may alter valuations for mortgage-backed securities.

10   • PACE loans result in collateral-based lending rather than lending based upon ability-
11     to-pay.

12   • There is great uncertainty as to whether PACE-financed improvements actually
13     produce any benefit.

14   (*Id.* at p. 990-91.)

15   The Authority also makes the generic legal argument that people do not owe a duty to protect

16   another person's business interests. (Authority's MPA, 15:6-7; 15:21-16:10.) But that approach was

17   squarely rejected in the case law that established impairment of security as a tort such as *U.S.*

18   *Financial* and *New Faze Development*. Moreover, the Authority has cited no statutory exception or

19   public policy rationale (nor has Fremont Bank identified any) that would act to relieve the Authority

20   of liability for its own negligent conduct.

21       **4.    Fremont Bank Should Be Allowed to Supplement the Evidence Based
22              on Factual Challenges Before Any Decision Is Made by the Court**

23   In any event, the Court should deny the Authority's anti-SLAPP challenge to the fifth cause

24   of action in order to give Fremont Bank the chance to take discovery, marshal evidence based on

25   the Authority's factual challenge, and to correct any deficiencies in its pleading that may exist. In

26   *Planned Parenthood, supra*, 890 F.3d 828, the Ninth Circuit made clear that discovery *must* be

27   allowed before any decision is made by a district court. It stated: "[W]hen an anti-SLAPP motion

28   to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56

-15-

1  standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement

2  evidence based on the factual challenges, before any decision is made by the court." (*Id.*, at p. 834.)

3  Such discovery would include the production of communications between the Authority and the

4  Patels about the consent and internal communications among employees of the Authority about this

5  atypical transaction.

6         **5.**    **The Court Should Grant Fremont Bank Leave to Amend to Cure**

7                       **Any Pleading Defects**

8          Alternatively, in the event that the Court is inclined to grant the motion, it should be without

9  prejudice and with leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). That statute

10  allows a party to amend its pleading with leave of court, which the court "should freely give when

11  justice so requires." (Fed. R. Civ. Proc. 15(a)(2).) Once again, the Ninth Circuit has spoken to this

12  in the context of an anti-SLAPP motion and held that "this policy is to be applied with extreme

13  liberality." (*Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148, 1160, quoting *Owens*

14  *v. Kaiser Found. Health Plan, Inc.* (9th Cir. 2001) 244 F.3d 708, 712 and *Morongo Band of Mission*

15  *Indians v. Rose* (9th Cir. 1990) 893 F.2d 1074, 1079.)

16          "In determining whether leave to amend is appropriate, the district court considers the

17  presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or

18  futility." (*Herring Networks*, 8 F.4th at p. 1160.) Here, there is no evidence to support any of these

19  factors. This action was filed relatively recently and is based on actions taken by the Authority this

20  past June. (Verified Complaint, ¶¶ 30-37, 73.) Thus, there has been no undue delay by Fremont

21  Bank or prejudice to the Authority. Further, Fremont Bank's claim for negligent impairment of

22  security is grounded in case law establishing that very same cause of action. (*U.S. Financial, supra,*

23  37 Cal. App. 3d at p. 13; *New Faze Development, supra,* 207 Cal. App. 4th at p. 302.) Thus, there

24  has been no bad faith by Fremont Bank. Finally, Fremont Bank may allege additional facts in

25  support of this claim, including the fact that Vallejo LLC is delinquent in the payment of its real

26  property taxes and the PACE Assessment, and that the Authority knew that the additional financial

27  burden it imposed on Vallejo LLC would make it impossible for the hotel to operate without

28  additional capital infusions. Thus, there is no futility in granting leave to amend.

-16-

C. **Entitlement to Attorneys' Fees**

California Code of Civil Procedure section 425.16(c) provides for an award of costs and reasonable attorneys' fees to the plaintiff where the court finds that the anti-SLAPP motion is frivolous or solely intended to cause unnecessary delay. (*See* Cal. Code Civ. Proc. § 425.16(c)(1).) Here, the Court should award Fremont Bank its costs and attorneys' fees because there is no reasonable basis for the Authority to strike the first and fifth causes of action of the Verified Complaint. The Authority mischaracterizes the Verified Complaint as an attempt to foreclose the Authority's interest and ignores clear law providing for its joinder *so that the extent and effect of the lien may be determined.* (Cal. Civ. Code § 2931.) The Authority also ignores clear law establishing the tort of negligent impairment of security and its role in causing substantial harm to Fremont Bank through its collusion with Vallejo LLC and the Patels. (*U.S. Financial, supra,* 37 Cal. App. 3d at p. 13; Cal. Civ. Code § 1714; *New Faze Development, supra,* 207 Cal. App. 4th at p. 302.) Nor does it even try to show how its collusion with the defendants to damage Fremont Bank's security constitutes constitutionally-protected speech.

On the other hand, should the Court grant the Authority's motion to strike as to one cause of action but not the other, fees should be apportioned to reflect the Authority's limited success. The fee-shifting provisions of section California Code of Civil Procedure section 425.16, subdivision (c) were enacted to impose litigation costs on those who assert meritless claims burdening the exercise of the defendant's constitutional free speech and petition rights. However, when a defendant is only partially successful in challenging portions of the complaint, these policies to ensure prompt and meaningful redress for the defendants subject to SLAPP suits must be balanced with the *plaintiff's* constitutional right to petition for redress of his or her claims. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal. App. 4th 328, 344-345.) If a partially successful plaintiff is required to bear the entire cost of the anti-SLAPP litigation, this could impose a financial barrier to the plaintiff continuing with the lawsuit and thus burdening the plaintiff's ability to exercise his or her right to petition for the redress of grievances. (*Id.*) Thus, a defendant is not entitled to obtain *as a matter of right* his or her entire attorney fees incurred on successful and unsuccessful claims. Rather, the fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should

-17-

1  be commensurate with the extent to which the motion changed the nature and character of the

2  lawsuit in a practical way. (*Id.; Mireskandari v. Daily Mail Gen. Trust PLC* (C.D. Cal. 2014) 2014

3  U.S. Dist. LEXIS 201202 ("[A] defendant that prevails on some, but not all, claims targeted in an

4  anti-SLAPP motion is not entitled to obtain as a matter of right its entire attorney fees incurred on

5  successful and unsuccessful claims merely because the attorney work on those claims was

6  overlapping.").)

7  **D.**  **This Motion Should Be Summarily Denied Because the Authority Failed to**

8  **Adequately Meet and Confer**

9  The instant motion does not comply with the meet and confer requirements of this Court's

10  Standing Order for Civil Cases, which provides that counsel shall (a) discuss thoroughly the

11  substance of the contemplated motion and any potential resolution, and (b) resolve procedural

12  matters so that the briefing is directed only to those substantive issues requiring resolution by the

13  Court.

14  Although counsel did speak once, on October 11, 2023, the primary topics of conversation

15  were the Authority's request for an extension of time to respond to the complaint, and the SBA's

16  removal of the action to federal court. Counsel for the Authority stated during the call that the

17  Authority was considering filing a motion to dismiss the cause of action for negligent impairment

18  of security and an anti-SLAPP motion; but, to the best of our recollection, counsel for the Authority

19  stated that he would send a meet and confer letter, or email, explaining the basis for the motion

20  before filing it. Fremont Bank stipulated to an extension of the due date for the Authority's

21  responsive pleading, so there was ample time for a meaningful meet and confer process to occur

22  before the motion was filed on November 14 (and before it was re-filed on December 20).

23  Moreover, California's anti-SLAPP statute, and California's judicial foreclosure laws and

24  procedures, are too intricate for counsel to meaningfully discuss the issues, without preparation,

25  during one telephone call.

26  Counsel for the Authority was informed that the case had been removed to federal court by

27  the SBA on October 10 during the October 11 call. So, on October 11, neither party was prepared

28  to discuss federal procedural matters and attempt to narrow the federal procedural issues associated

-18-

1    with this motion. As a result, when the instant motion was filed, the Authority was unaware that

2    Fremont Bank contends that Rule 56, not Rule 12(b)(6), applies to the motion to dismiss the fifth

3    cause of action. The Authority will have to address this procedural issue in its reply brief and,

4    depending on the Authority's position, Fremont Bank may need to request leave to submit a sur-

5    reply brief.

6          Likewise, the entirety of page 12, and part of page 13, of the Authority's moving papers are

7    devoted to the argument that the filing of a lien is a protected form of speech, a matter that is not in

8    dispute. However, the Authority does not address Fremont Bank's contention that the conduct at

9    issue in the fifth cause of action is the Authority colluding with Vallejo Hospitality LLC to default

10   on its mortgage by borrowing twice against the same collateral, and not the filing of a lien. This too

11   will have to be addressed by the Authority for the first time in its reply brief.

12         Another topic that would have been discussed during the meet and confer process (had it

13   occurred) is California Civil Code section 2931a, which provides that a state agency charged with

14   the collection of an obligation other than ad valorem taxes on real property may be made party to

15   an action to judicial foreclosure. However, because counsel spoke just once, Fremont Bank did not

16   bring this statute to the attention of the Authority; and there is no discussion of California Civil Code

17   section 2931a in the Authority's moving papers. Perhaps, with the benefit of this citation, the

18   Authority would have conceded that Fremont Bank is correct and the extensive briefing on the

19   motion to dismiss the first cause of action could have been avoided.

20         Finally, the parties never conferred on whether the deficiencies perceived by the Authority

21   could have been resolved through the filing of an amended pleading. Given that it is rare for a

22   motion to dismiss to be granted without leave to amend, meeting and conferring could have

23   streamlined the process.

24         Had the parties met and conferred as required as required, they may have been able to resolve

25   some or all of the issues raised by the instant motion, thus saving the Court's limited time and

26   resources.

27

28

PLAINTIFF'S MP&A IN OPPOSITION TO SPECIAL MOTION TO STRIKE
COUNTS ONE AND FIVE OF COMPLAINT
Case No. 2:23-cv-02281-DJC-JDP

V.    **CONCLUSION**

For all the reasons stated above, Fremont Bank respectfully requests that the Court deny the Authority's anti-SLAPP motion to strike the first and fifth causes of action of the bank's Verified Complaint herein, and enter all other appropriate relief, including an order for fees and costs following submission of a fee petition.    Alternatively, should the Court be inclined to grant the Authority's motion, Fremont Bank requests that the Court dismiss the claims without prejudice and grant Fremont Bank leave to take discovery and to cure any purported defects in its claims for relief.


Dated:  January 4, 2024                          KIRSCHENBAUM LAW, PC


                                    By:  _/s/ Jeffrey B. Kirschenbaum_____
                                        Jeffrey B. Kirschenbaum
                                        Attorneys for Plaintiff
                                        FREMONT BANK

-20-

1                                  **<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the office of a member of the Bar of this Court at whose direction this service was made, and not a party to this action. My business address is 328 15th Street, Oakland, California 94612. On January 4, 2024, I electronically filed a true and correct copy of the attached document using the Court's filing system. Notice of this filing will be sent to all parties via the Court's CM/ECF filing system. Parties may access this filing through the Court's system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed January 4, 2024, at Oakland, California.

_____
Sandra Peralta-Bernal